U.S. DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

JUL 0 6 2015

CHRIS R. JOHNSON, Clerk
By
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

COLBY CENTER, individually and on
behalf of all others similarly situated                                    PLAINTIFF

V.                    CASE NO. 5:14-CV-05248

CONAGRA FOODS, INC.                                                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant ConAgra Foods, Inc's ("ConAgra") Motion for Judgment on the Pleadings (Doc. 29) and brief in support (Doc. 29-1), Plaintiff Colby Center's ("Center") Response in Opposition (Doc. 40), and ConAgra's Reply (Doc. 50). For the reasons set forth herein, ConAgra's Motion for Judgment on the Pleadings (Doc. 29) is **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

Center brings this putative class action on behalf of Arkansas consumers pursuant to the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq.*, and other state law causes of action, regarding allegedly deceptive and misleading labels on certain PAM products. The Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) as this is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, at least one member of the class of plaintiffs is a citizen of a different state than a defendant, and the class has more than 100 members.

Center filed this action in the Circuit Court of Washington County, Arkansas. ConAgra removed the matter to this Court on August 6, 2014. The allegations in the

Amended Complaint ("Complaint") stem from labeling used in marketing and advertising PAM Original cooking spray, 100% Natural PAM Certified Organic Olive Oil cooking spray, and 100% Natural PAM Butter Flavor cooking spray ("PAM products"), which describes those products as "100% Natural." Center alleges that ConAgra has labeled PAM products deceptively because they actually contain "24% Petroleum gas (liquified), Propane, Propane 2-methyl (isobutene) and Butane." (Doc. 3, p. 5). Center contends that ConAgra mislabeled PAM products in order to charge a premium for the products. According to Center, mislabeled products cannot be legally sold or possessed, and misbranded food has no economic value. He further contends that had he known that the misbranded cooking sprays were illegal to sell or possess, he would not have purchased them.

Center alleges violations of the Arkansas, Food, Drug, and Cosmetic Act ("AFDCA"), Ark. Code Ann. § 20-56-201, *et. seq.*, which serves as the factual predicate for five causes of action: (1) violations of the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-101, *et seq.*; (2) unjust enrichment; (3) breach of implied warranty of merchantability; (4) breach of express warranty; and (5) negligence.

ConAgra seeks to have the Complaint dismissed due to express preemption by the federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA") and Center's failure to allege sufficient facts to support his claims. In response, Center maintains that preemption is not proper since he seeks to enforce state law food-labeling requirements that are identical to those of the FDCA. He contends that his other claims under Arkansas law are properly pled.

## II. LEGAL STANDARD

A motion for judgment on the pleadings made pursuant to Federal Rule of Civil Procedure 12(c) requires the Court to "accept as true all factual allegations set out in the complaint" and to "construe the complaint in the light most favorable to the plaintiff[s], drawing all inferences in [their] favor." *Ashley Co., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (internal citation omitted). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law, the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* (internal citation omitted). "[W]ell-pleaded facts, not legal theories or conclusions, determine [the] adequacy of [t]he complaint." *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) (internal citations omitted). The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* (citing *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

## III. DISCUSSION

### A. Whether Center's Claims are Preempted by the FDCA

ConAgra first asserts that this action should be dismissed because Center's Complaint is preempted by the FDCA as amended by the Nutrition Labeling and Education Act, Pub. L. No. 101-535, 104 Stat. 2353 (1990) ("NLEA"). Center counters that he is not suing under the FDCA but rather under Arkansas state law for claims arising under the AFDCA, which Center contends is identical to the food labeling regulations of the Food and Drug Administration ("FDA"). In support of this contention, he points out that section 20-56-

209(7) of the Arkansas Code provides that any food is misbranded if it falls short of standards prescribed by the FDCA.

The Supreme Court has long recognized that state laws that conflict with federal law are "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (internal citation omitted). That is, Congress has the power to preempt state laws. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53 (1982). Federal preemption occurs when: (1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field. *See generally In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F. 3d 781, 791-94 (8th Cir. 2010). Although in the instant case, ConAgra only argues that Center's claims are expressly preempted, the Court will also address field preemption, as the lack of a formal definition of "natural" reveals that the FDA did not intend to occupy the field as to labels containing the term "100% Natural."

Preemption is express where Congress has "explicitly stated [its intent] in the statute's language . . . ." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (internal quotation marks omitted). Thus, "[t]he critical question in any pre-emption analysis is whether Congress intended that federal regulation supersede state law." *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 369 (1986). Moreover, in the context of state laws dealing with matters traditionally within the historic police powers of the states, congressional intent to preempt such laws must be "clear and manifest." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotation marks omitted). In the absence of

explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended to occupy exclusively, *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990), such that the scheme of federal regulation is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (internal citation and quotations omitted).

The FDCA grants the FDA the responsibility to protect public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2). There is no private right of action under the FDCA. 21 U.S.C. § 337(a). In 1990 Congress passed the NLEA, amending the FDCA, to specifically address labeling requirements for certain food and beverage products. The NLEA, codified as part of the FDCA, provides for national uniform nutrition labeling, and expressly preempts state law that is inconsistent with its requirements. 21 U.S.C. § 343–1(a). Claims need not fail on preemption grounds if the requirements they seek to impose are either identical to those imposed by the FDCA and the NLEA amendments or do not involve claims or labeling information of the sort described in sections 343(b-f), (h), (i (1-2)), (k), (q), or (r). *See, e.g., N. Y. State Rest. Ass'n*, 556 F.3d 114, 123 (2nd Cir. 2009); *In re Simply Orange Juice Mktg. & Sales Practices Litig.*, 2013 WL 781785, at *3 (W.D. Mo. Mar. 1, 2013); *Ackerman v. Coca–Cola Co.*, 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010). Section 343-1(a) of the FDCA lists provisions that expressly preempt state law, which does not include § 343(a)—the general prohibition on "false or misleading" labeling. *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 370 (N.D. Cal. 2010). Therefore, the express preemption provision

contained in 343-1(a) does not preempt claims arising from false or misleading labels unless they arise out of the specific instances outlined in sections 343(b-f), (h), (i (1-2)), (k), (q), or (r).

Center alleges in his Complaint that PAM products violate Ark. Code Ann. § 20-56-209 because they are improperly described as "100% Natural." In particular, Center contends the PAM products are mislabeled because the presence of petroleum gas, propane, propane 2-methyl, and butane means that the products contain artificial and synthetic ingredients, which preclude the labeling of the products as "natural." ConAgra argues that Center has not alleged that the "portion of the PAM product that is actually consumed contains 'artificial' or 'synthetic' ingredients." (Doc. 29-1, p. 5). ConAgra further asserts that because synthetic ingredients have not been added to the edible portion of the products, the products may appropriately be labeled "100% Natural." However, at this stage in the proceedings, the Court must construe the Complaint in the light most favorable to Center, drawing all reasonable factual inferences in his favor. ConAgra's factual disputes are more appropriately resolved at a later stage.

The Court distinguishes its holding in *Craig v. Twinings*, 2015 WL 505867 (W.D. Ark. Feb. 5, 2015), where it dismissed similar false labeling claims based on express preemption. The label in Twinings advertised tea as a "natural source of antioxidants," which is expressly permitted by the FDCA because of a regulation that exempts tea from the nutrient-content requirements under 21 U.S.C. § 343(r). The Court further found that Twinings' tea labels did not violate the FDA's labeling requirements because they did not characterize the level of antioxidants. Thus, all of the plaintiff's state-law claims were preempted because the plaintiff was seeking to impose liability in a manner that was

6

expressly inconsistent with the FDCA. The instant case differs from *Twinings* because it has nothing to do with special labeling requirements applicable to tea, and there are no corollary regulations that would be similarly preemptive of the instant dispute.

Turning to field preemption, the term "natural" is not defined in the FDCA, and the FDA has expressly declined to define "natural" in any regulation or formal policy statement. The FDA adopted an informal policy that "natural" means merely that "nothing artificial or synthetic (including colors regardless of source) is included in, or has been added to, the product that would not normally be expected to be there." 58 Fed. Reg. 2302–01 at *2407 (Jan. 6, 1993). In 1991, the FDA solicited comments on a potential rule adopting a definition for the term "natural," noting that the use of "natural" on food labels "is of considerable interest to consumers and industry." *See id.* However, the FDA concluded that while "the ambiguity surrounding the use of this term . . . could be abated" if the term were adequately defined, the FDA was unwilling at that time to consider defining "natural" because of "resource limitations and other agency priorities." *Id*.

The Court must consider whether the requirements Center seeks to impose in his state-law action are identical to the requirements in the NLEA. While § 343-1 lists specific instances where labeling is preempted, allegations regarding "all natural" do not fall under these categories. The parties do not cite to, and the Court does not find, any regulation of the use of "natural" on a food label. A finding of express preemption requires explicit statutory language preempting Center's claims. Thus, with respect to Center's claims, and unlike the express regulations discussed in *Twinings*, there are no federal requirements regarding the term "natural" to be given preemptive effect.

## B. Actual Damages Under the ADTPA

ConAgra contends that Center fails to assert a private cause of action under the ADTPA because he has alleged a claim for a mere diminution in value of the purchased product. However, Center argues that he bargained for PAM products that were represented as "100% Natural" although they contain petroleum gas, propane, propane 2-methyl, and butane. Center contends that ConAgra violated the ADTPA when it knowingly advertised and sold PAM products that were "mislabeled." Center claims he reasonably relied upon certain representations made in connection with the labels on PAM products, and now finds himself damaged due to having paid a premium for products he otherwise would not have purchased.

When a person "suffers actual damage or injury as a result of an offense or violation" of the ADTPA, Ark. Code Ann. § 4–88–113(f), a cause of action for liability may be brought for any "unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4–88–107(a)(10). The Act prohibits a variety of listed practices, including "[k]nowingly making a false representation as to the . . . characteristics . . . of goods or services" and contains a catchall provision prohibiting "any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4–88–107(a)(1), (a)(10).

However, the ADTPA has a safe-harbor provision that prohibits a plaintiff from bring a suit regarding:

> (3) Actions or transactions *permitted* under laws administered by the Insurance Commissioner, the Securities Commissioner, the State Highway Commission, the Bank Commissioner, or other regulatory body or officer

> acting under statutory authority of this state or the United States, unless a director of these divisions specifically requests the Attorney General to implement the powers of this chapter.

Ark. Code Ann. §4-88-101 (emphasis added).

The Court observes that, in Arkansas, the ADTPA does not apply to conduct regulated by a state agency, such as the Arkansas Board of Health. Courts have applied two rules regarding the construction of safe-harbor provisions to state DTPAs: (1) the "specific-conduct" rule, which looks to whether state law permits or prohibits the conduct at issue and only exempts expressly permitted conduct from DTPA claims; and (2) the "general-activity" rule, which looks to whether a state agency regulates the conduct, in which case a regulated actor enjoys full exemption from the DTPA.[1] *See e.g., Skinner v. Steele*, 730 S.W.2d 335, 338 (Tenn. Ct. App. 1987) (finding that the insurance industry is not exempt from the Tennessee Consumer Protection Act, as the sale of an insurance policy or annuity does not constitute an act or transaction that is "required or specifically authorized"); *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 55 (Colo. 2001), as modified on denial of reh'g (Jan. 11, 2002) (finding that Colorado's Unfair Claims—Deceptive Practices Act (UCDPA) does not preclude a private cause of action by an insured against an insurer under the CPA). *But see State v. Piedmont Funding Corp.*, 119 R.I. 695, 699 (1978) (concluding that the Legislature exempted all activities and businesses which are subject to monitoring by state or federal regulatory bodies or officers from the Deceptive Trade Practices Act); *Ferguson v. United Ins. Co. of Am.*, 163 Ga. App.

---

[2]Nathan Price Chaney, *The Arkansas Deceptive Trade Practices Act: The Arkansas Supreme Court Should Adopt the Specific Conduct Rule*, 67 ARK. L. REV. 299, 300 (2014).

282, 282 (1982) (finding that insurance transactions are among those types of transactions which are exempt from the Fair Business Practices Act).

In *DePriest v. AstraZeneca Pharm., L.P.*, 2009 Ark. 547 (2009), the Arkansas Supreme Court found that permitted conduct is exempted from the safe-harbor provision. In that case, the court applied the specific-conduct rule and upheld the trial court's dismissal of a class action that alleged that AstraZeneca violated the ADTPA by fraudulently marketing one of its drugs. *Id.* at *18. There, the FDA specifically approved the labeling for the drug, and therefore the court found that the safe-harbor exemption applied because AstraZeneca's actions were consistent with the FDA-approved labeling for the drug. *Id.* at *16-18. Thus, the Arkansas Supreme Court did not consider the general-activity rule.

However, in a more recent Arkansas Supreme Court case, the general-activity rule was applied. *See Arlow Designs, LLC v. Ark. Capital Corp.*, 2014 Ark. 21 (2014). The Arkansas Supreme Court upheld the dismissal of the plaintiff's claim under the ADTPA because the banks at issue were subject to the control of regulatory agencies, such as the Arkansas State Board of Finance and the Office of the Comptroller of Currency and the Federal Deposit Insurance Commission. *Id.* at *6. The Court found that because banks are "regulated by a regulatory body acting under statutory authority of Arkansas or of the United States, their actions and transactions are not subject to claims that can be brought under the ADTPA unless a specific request has been made to the Attorney General." *Id.* Consistent with the plain language of the ADTPA, it appears that the Arkansas Supreme Court recognizes and applies the so-called general-activity rule. In other words, the safe-

harbor provision exempts regulated conduct by regulated actors regardless of whether substantive state law explicitly authorizes or prohibits the precise conduct at issue.² Therefore, the ADTPA does not apply to conduct regulated by a state or federal agency, such as the Arkansas Board of Health and/or the FDA.

The Court finds that because the alleged mislabeling of products is conduct that is regulated by the FDA and the Arkansas Board of Health,³ the safe-harbor provision applies, and there is no private right of action. Center's ADTPA claim is therefore dismissed with prejudice.

### C. Unjust Enrichment

ConAgra argues that Center's unjust enrichment claim should be dismissed because he does not allege that ConAgra received a direct benefit, or even had direct dealings with Center. "[A]n action based on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain." *El Paso Prod. Co. v. Blanchard*, 371 Ark.

---

³*See also Williams v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2573196, at *4 (E.D. Ark. June 22, 2010) (finding that the ADTPA does not apply to insurance activities regulated under the Insurance Commissioner, as this "would render the exceptions listed in section 4-88-101 meaningless and would doubtless run afoul of the statutory scheme created by the Arkansas General Assembly. . . . To hold that insurance carriers are subject to private causes of action brought pursuant to the ADTPA would be contrary to the statutory scheme established by the Arkansas General Assembly."); *King v. Homeward Residential, Inc.*, 2014 WL 6485665, at *1 (E.D. Ark. Nov. 18, 2014) (finding the ADTPA does not apply to actions or transactions permitted under laws administered by the Arkansas Insurance Commissioner or by any other officer or regulatory body acting under state or federal statutory authority).

⁴The Arkansas Board of Health regulates this conduct under the AFDCA at Ark. Code Ann. § 20-56-201 through § 20-64-1103. The FDA regulates this conduct under the FDCA at 21 U.S.C. § 301 through § 399(f).

634, 646 (2007). To find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore. *Id.* The amount of recovery is measured by the value of the benefit conferred upon the party unjustly enriched. *Sanders v. Bradley Cnty. Human Servs. Pub. Facilities Bd.*, 330 Ark. 675, 682 (1997). The issue of unjust enrichment is a question of fact. *Grisanti v. Zanone*, 2010 Ark. App. 545, at *6-7 (2009).

Center's unjust enrichment claim was premised on the notion that ConAgra was unjustly enriched at his expense when it received money based on labels that contained "misrepresentations" about PAM products. Center has alleged sufficient facts at this stage in the litigation to survive dismissal, as there remain questions of fact as to whether a benefit was conferred on ConAgra due to its alleged misprepresentations and whether Center is entitled to any recovery as a result.

### D. Breach of Implied Warranty of Merchantability

To recover for breach of implied warranty of merchantability, Center must prove: (1) that he has sustained damages; (2) that the product sold to him was not merchantable, *i.e.*, fit for the ordinary purpose for which such goods are used; (3) that this unmerchantable condition was a proximate cause of his damages; and (4) that he was a person whom the defendant might reasonably expect to use or be affected by the product. *E.I. Du Pont de Nemours & Co. v. Dillaha*, 280 Ark. 477, 480 (1983). The warranty of merchantability generally promises that "the goods will conform to the ordinary standards and are of average grade, quality, and value of like goods which are generally sold in the stream of commerce." *Rynders v. E.I. Du Pont De Nemours & Co.*, 21 F.3d 835, 841 (8th Cir. 1994)

(citing Alphonse M. Squillante & John R. Fonseca, *Williston on Sales* § 18–5 at 67–68 (4th ed. 1974 and 1993 supplement) and U.C.C. § 2-314 Comment 2 (1990) (goods "must be of a quality comparable to that generally acceptable in that line of trade")).

Center argues that the products at issue violate the implied warranty of merchantability because the products are illegal, misbranded, and economically worthless. However, Center has not alleged that the products lack even the most basic degree of fitness for ordinary use, such as the ability to be consumed. His implied warranty claim therefore fails, and it is dismissed without prejudice.

### E. Breach of Express Warranty

Center alleges that ConAgra's product labels constitute express warranties that became part of the basis of his bargain with ConAgra, such that ConAgra's failure to deliver a "100% Natural" product constituted a breach of warranty. "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *Ciba-Geigy Corp. v. Alter*, 309 Ark. 426, 447 (1992) (citing Ark. Code Ann. § 4-2-313(1)(a)).

ConAgra's statements that the PAM products are "100% Natural" is an affirmative claim that Center maintains is false. The Court finds that Center has alleged sufficient facts to make out a claim for breach of express warranty.

### F. Negligence

Lastly, ConAgra also argues that Center failed to state a claim for negligence. Center alleges that ConAgra failed to lawfully label its products and disclose material facts

in direct violation of Arkansas statutes, thus constituting negligence *per se*. To establish a claim for negligence under Arkansas law, a plaintiff must demonstrate that: (1) a duty of care was owed; (2) the defendant breached that duty of care; and (3) the breach was the proximate cause of the plaintiff's injuries. *Yanner Co., Ltd. v. Slater*, 2012 Ark. 36 (2012) (internal citations omitted). "To constitute negligence, an act must be one from which a reasonably careful person would foresee such an appreciable risk of harm to others as to cause him not to do the act, or to do it in a more careful manner." *Wallace v. Broyles*, 331 Ark. 58, 67 (1998) (citing AMI Civil 3rd 301).

Because it is unclear at this juncture whether the labels in question violate the labeling regulations prescribed by the AFDCA, Center has sufficiently alleged that ConAgra breached a duty of care, which was a proximate cause of his alleged damages, and therefore his negligence claim survives the Motion for Judgment on the Pleadings.

## IV. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that ConAgra's Motion for Judgment on the Pleadings (Doc. 29) is **GRANTED IN PART AND DENIED IN PART**. The Motion is **DENIED** as to whether Plaintiff Colby Center's claims are preempted by federal law. The Motion is further **DENIED** with respect to Center's claims of unjust enrichment, breach of express warranty, and negligence.

The Motion is **GRANTED** with respect to Center's claims for breach of implied warranty of merchantability and for violations of the ADTPA. Center's claim for breach of implied warranty of merchantability is **DISMISSED WITHOUT PREJUDICE**. Center's claim for violation of the ADTPA is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED** this  6th  day of July, 2015.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE